SCHNEIDER NATIONAL, INC., a Nevada Corporation; and Schneider National Carriers, Inc., a Nevada Corporation, Appellants (Defendants—Third–Party Plaintiffs),

v.

HOLLAND HITCH CO., a Michigan Corporation and Rissler & McMurry Co., a Wyoming Corporation, Appellees (Third–Party Defendants).

No. 91–44.

Supreme Court of Wyoming.

Dec. 9, 1992.

Larry B. Kehl and George J. Argeris of Guy, Williams, White & Argeris, Cheyenne, for appellants.

Thomas G. Gorman, John J. Metzke and Steven K. Sharpe of Hirst & Applegate, Cheyenne, for appellee Holland Hitch Co.

Richard Barrett of Hathaway, Speight, Kunz, Trautwein & Barrett, Cheyenne, for appellee Rissler & McMurry Co.

George Santini of Graves, Santini & Villemez, Cheyenne, for the Wyoming Trial Lawyers Ass'n, amicus curiae.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

URBIGKIT, Justice.

In the legal aftermath of a deadly accident along southern Wyoming's Interstate 80, the United States Court of Appeals for the Tenth Circuit certified a number of questions of law to the Wyoming Supreme Court. Complex questions of the interrelationship between comparative negligence tort reform legislation, Wyo.Stat. § 1–1–109 (1988), and indemnity, an area of common law which the United States Court of Appeals considered nebulous, are before the court.

Initially, the questions presented require application of the controlling decision found in *Phillips v. Duro–Last Roofing, Inc.*, 806 P.2d 834 (Wyo.1991). *Phillips* was publish-

---

* Chief Justice at time of oral argument.

ed following the certification order of the Tenth Circuit in this present case. Ultimately, the answers to the certified questions require policy choices about principles of indemnity under common law allocating liability to the actor most able to prevent future occurrences. We adopt a system of comparative partial indemnity for equitable implied indemnity actions premised on negligence. Traditional equitable implied indemnity rules are stated for products liability actions based on strict liability or breach of warranty.

Specifically, the questions certified to this court inquire:

A. Does Wyoming's current comparative negligence statute, W.S. § 1–1–109 (1988), which requires that damages in an action "to recover damages for negligence" be allocated according to the "percentage of fault attributable to each actor," permit strict liability and breach of warranty to be considered and weighed in the same manner as negligence in determining each actor's "percentage of fault" for the plaintiff's injuries and their corresponding liability for the plaintiff's damages?

B. If Wyoming's current comparative negligence statute does permit equal consideration of negligence, strict liability and breach of warranty in allocating fault and determining each actor's share of damages, does an actor have a right of indemnity against another responsible actor, in the absence of an express contract of indemnity, in the following circumstances:

i. The party seeking indemnity was passively or secondarily negligent while the alleged indemnitor was actively or primarily negligent;

ii. The party seeking indemnity was either passively/secondarily or actively/primarily negligent while the alleged indemnitor was strictly liable to the injured party; or

iii. The party seeking indemnity was either passively/secondarily or actively/primarily negligent while the alleged indemnitor was liable on a breach of warranty grounds?

C. If Wyoming's current comparative negligence statute does not negate any right to indemnity in all of the above situations, and in the absence of an express contract of indemnity:

i. Does Wyoming law permit a "passively" or "secondarily" negligent actor whose failure to inspect contributed to a third party's injuries to obtain indemnity from the "actively" or "primarily" negligent actors who created or were otherwise directly responsible for the conditions that caused the third party's injuries?

ii. Does Wyoming law grant either "actively" or "passively" negligent actors a right of indemnity against another actor who was liable for the third party's injuries on strict liability or breach of warranty grounds?

## I. FACTS

Schneider National, Inc. and Schneider National Carriers, Inc. (Schneider)[1] operate an interstate trucking firm. On July 10, 1987, a Schneider semi-tractor and trailer traveled into a construction zone on Interstate 80 near Rawlins, Wyoming. Traffic in the area had been channeled into single lanes traveling in opposite directions on a shared roadbed. At some point, the Schneider trailer separated from the semitractor. The trailer veered into the oncoming traffic lane, struck several vehicles, including one containing four members of an Englewood, Colorado family, the Horowitz's. Bruce S. Horowitz, Catherine O. Horowitz and Michael Brandon Horowitz were all killed. Only one son, Brian Scott Horowitz, survived.

---

1. Schneider National, Inc., a Nevada corporation, is the parent corporation of: Schneider National Leasing, Inc., a Nevada corporation; Schneider National Carriers, Inc., a Nevada corporation; Schneider Transport, Inc., a Wisconsin corporation; and Schneider Tank Lines, Inc., an Illinois corporation. These five business entities are named in this litigation. For convenience, the term "Schneider" will be used in this opinion to collectively refer to the parent and subsidiary business entities.

Dr. Irving J. Horowitz, the appointed administrator of the estates, instituted a wrongful death proceeding against Schneider on behalf of Brian Scott Horowitz (Horowitz). Filed on April 5, 1988, the action was brought in the United States District Court for the District of Wyoming under federal diversity jurisdiction, 28 U.S.C. § 1332. The complaint, seeking actual and punitive damages, alleged Schneider's negligence or negligent entrustment in: (1) operating the tractor and trailer in an unsafe and dangerous condition; (2) failing to inspect the tractor and trailer; (3) hiring an unfit employee; (4) failing to supervise employees conducting inspections of the tractor and trailer; (5) failing to make and enforce company policies for the safe operation of vehicles and; (6) entrusting the tractor and trailer to an unfit driver. The allegations state a mixture of "active" and "passive" forms of negligence.

Schneider responded to the wrongful death action by filing a third-party complaint against Holland Hitch Company (Holland) and Rissler & McMurry Company (Rissler). Holland designed, manufactured and sold the "fifth wheel" device (hitch) that connected the Schneider semi-tractor to the trailer. Rissler was the contractor supervising the highway construction and traffic diversion at the time of the crash. As the third-party plaintiff, Schneider sought indemnity against the third-party defendants, Holland and Rissler, "for any and all sums and losses which they, or any of them, may be obligated to pay" Horowitz in the wrongful death action. Schneider denied all allegations of negligence, but pled in the alternative that if Schneider was negligent, its negligence was "secondary and/or passive" while Holland's and/or Rissler's negligence or liability was "primary and/or active." If indemnity was denied, Schneider argued the "negligence, fault, and/or liability" of the third-party defendants should be determined "pursuant to the laws of the State of Wyoming" because the third-party defendants were the "sole and direct proximate cause of the accident * * *."

Schneider advanced three theories of indemnity recovery against Holland. First, strict liability for the defective design and manufacture of a hitch that was unreasonably dangerous at the time it was sold. Second, breach of express and implied warranties that the hitch was safe, merchantable and fit for its ordinary use. Third, negligent design, manufacture, testing, inspection and supply of the hitch.

Schneider's theory of indemnity recovery against Rissler was negligence. Schneider alleged Rissler breached its duty to perform the construction work in a safe and prudent manner. Specifically, Schneider alleged Rissler failed in its duty to provide a "non-dangerous" traffic by-pass.

Holland and Rissler challenged the sufficiency of Schneider's allegations by filing a motion to dismiss for failure to state a claim upon which relief could be granted. F.R.C.P. 12(b)(6). Following briefing and a hearing, the United States District Court for the District of Wyoming granted the motion and dismissed the third-party action against Holland and Rissler. In its disposition order, the United States District Court stated its view of the issues which are now before this court:

Contrary to Rissler & McMurry Company's assertions, common law indemnity is still available in Wyoming despite the repeal of contribution in 1986. Session Laws of Wyoming, 1986, Ch. 24, Section 2. Wyoming law recognized implied indemnity at least 47 years before a right to contribution was created. *Miller v. New York Oil,* [34 Wyo. 272], 243 P.[ ] 118 (Wyo.1926). Nothing in the repeal of contribution indicates that implied indemnity was also "repealed." The court also disagrees with Rissler & McMurry Company's assertion that *Convoy Company v. Dana,* 359 P.2d 885, 887 (Wyo.1961), precludes recovery under a theory of implied indemnity. Even so, the court is convinced that the Schneider defendants are not entitled to assert implied indemnity in this case.

This accident occurred after the effective date for repeal of joint and several liability and adoption of a form of pure comparative negligence. As a result, the Schneider defendants can be liable only

for their percentage of the fault. Wyo. Stat. § 1–1–109(c) (Supp. June 1988). The Schneider defendants will not be at fault if the accident resulted exclusively from a product defect. The fault of all actors, including those who are not parties, is included in the verdict form. Wyo.Stat. § 1–1–109(b)(1)(A) (Supp. June 1988). In such a circumstance, there is no need for indemnity.

Plaintiff alleges that the Schneider defendants are responsible for *their own* conduct. As bases for liability plaintiff alleges negligent entrustment and failure to inspect. These allegations are of active, not passive, negligence. The trucking companies point to no one who undertook to fulfill these responsibilities. Under Wyoming law, joint tortfeasors may not seek indemnity against each other. *Convoy Company,* 359 P.2d at 887.

The court is persuaded that this rule is not changed when an active tortfeasor seeks indemnity on theories of strict liability and breach of warranty. *See State ex. rel. Deere & Company v. District Court,* 224 Mont. 384, 730 P.2d 396, 405 (Mont.1986); *Rael v. F & S Company, Inc.,* 94 N.M. 507, 612 P.2d 1318 (N.M.Ct. App.1979); *King & Johnson Rental Equipment Company v. Superior Court,* 123 Ariz. 256, 599 P.2d 212 (1979). In this court's view of Wyo.Stat. § 1–1–109 (Supp. June 1988), the "fault" compared includes strict liability and breach of warranty as well as negligence. Indemnity is inappropriate since the Schneider defendants can only be held liable for their share of the fault. That fault, if found, will be measured on the basis of the conduct of the Schneider defendants for which no one else was responsible.

(Emphasis in original.)

The assumption in the United States District Court's order that liability would be determined at the trial of the wrongful death action and fault apportioned proved incorrect. Midway through the proceeding, Horowitz and Schneider settled. Dismissed from the underlying action, Holland and Rissler were not participants in the settlement. Schneider's negligence, if any, was never judicially determined. Similarly, no judicial determination was made of Holland's or Rissler's liability or fault.

After the settlement, the United States District Court dismissed, with prejudice, the wrongful death action. Schneider then filed a timely notice of appeal of the United States District Court's dismissal of the third-party complaint against Holland and Rissler. The appeal, before the United States Court of Appeals for the Tenth Circuit, seeks to reverse the United States District Court ruling that Schneider had failed to state a claim upon which relief may be granted.[2]

## II. DISCUSSION

The certified questions direct this court to address the legal availability, in Wyoming, of the remedies which Schneider seeks. The certified questions, however, will not answer whether Schneider's third-party complaint states a sufficient claim to withstand a F.R.C.P. 12(b)(6) motion to dismiss. This court's role in a certified question proceeding is restricted.

> The Supreme Court may answer questions of law certified to it by a federal court when requested by the certifying court, if there is involved in any proceeding before it a question of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court.

2. The facts are taken from the Certification of Questions of State Law and the record on appeal before this court. While the parties to this action attempted in oral argument and briefing to characterize certain facts in a manner most favorable to their position, especially those which might refer to active or passive negligence, this court's role in answering a certified question does not include fact finding. *Reliance*

W.R.A.P. 11.01.[3] *See* Wyo.Stat. §§ 1–13–104 through 1–13–107 (1988). The United States Court of Appeals for the Tenth Circuit retains jurisdiction to apply the Wyoming law stated in this opinion to the substantive and procedural issues presented by the parties in their appeal of the United States District Court's order. *B & W Glass, Inc. v. Weather Shield Mfg., Inc.,* 829 P.2d 809, 812 (Wyo.1992).

**A. Negligence and Comparative Fault— *Phillips***

The first certified question directs our attention to the language of Wyo.Stat. § 1–1–109, which provides:

(a) Contributory negligence shall not bar a recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if the contributory negligence of the said person is not more than fifty percent (50%) of the total fault. Any damages allowed shall be diminished in proportion to the amount of negligence attributed to the person recovering.

(b) The court may, and when requested by any party shall:

(i) If a jury trial:

(A) Direct the jury to find separate special verdicts determining the total amount of ·damages and the percentage of fault attributable to each actor whether or not a party; and

(B) Inform the jury of the consequences of its determination of the percentage of fault.

(ii) If a trial before the court without jury, make special findings of fact, determining the total amount of damages and the percentage of fault attributable to each actor whether or not a party.

(c) The court shall reduce the amount of damages determined under subsection (b) of this section in proportion to the amount of fault attributed to the person recovering and enter judgment against each defendant in the amount determined under subsection (d) of this section.

(d) Each defendant is liable only for that proportion of the total dollar amount determined as damages under paragraph (b)(i) or (ii) of this section in the percentage of the amount of fault attributed to him under paragraph (b)(i) or (ii) of this section.

The answer to the question, whether comparative negligence and comparative fault[4] principles apply to theories of recovery based on strict liability or breach of warranty, is controlled by this court's recent decision in *Phillips*. Answering questions certified by the United States District Court, for the District of Wyoming, the *Phillips* court held Wyo.Stat. § 1–1–109 was "confined by its text and title to actions involving negligence." *Phillips*, 806 P.2d at 836. The specific language of the statute limits its operation by referring to

*Ins. Co. v. Chevron U.S.A., Inc.,* 713 P.2d 766 (Wyo.1986).

**3.** W.R.A.P. 11.01 has been substantially changed to include, in addition to the federal court, a process for certification by a state district court. W.R.A.P. 11.01, effective November 1, 1992, states:

The supreme court may answer questions of law certified to it by a federal court or a state district court, and a district court may answer questions of law certified to it by a county court, justice of the peace court, municipal court or an administrative agency, if there is involved in any proceeding before the certifying court or agency a question of law which may be determinative of the cause then pending in the certifying court or agency and concerning which it appears there is no controlling precedent in the decisions of the supreme

court. Any decision rendered by a district court under this section may be reviewed by the supreme court only through the provisions for writ of review. Rule 13.

**4.** A distinction is made in this opinion between the terms "comparative negligence" and "comparative fault." "Comparative negligence" defines the doctrinal change created by the legislative adoption in Wyoming of principles limiting the effect of contributory negligence and measuring negligence in percentage terms for the purpose of reducing the plaintiff's recovery in proportion to the percentage of negligence at-. tributed to that actor. Wyo.Stat. § 1–1–109(a), (b) and (c). "Comparative fault" principles apportion damage recovery among multiple or joint tortfeasors according to the percentage of fault attributed to those actors after reduction for the plaintiff's percentage of negligence. Wyo.Stat. § 1–1–109(d).

"a recovery *in an action* \* \* \* *to recover damages for negligence* \* \* \*." Wyo.Stat. § 1–1–109(a) (emphasis added).

Despite arguments to the contrary, subsection (d) should not be read in isolation to apply comparative fault to actions other than negligence. Every subsection of a statute "must be read in the context of all others to ascertain the meaning of the whole statute." *B & W Glass*, 829 P.2d at 816; *accord Gookin v. State Farm Fire and Cas. Ins. Co.*, 826 P.2d 229 (Wyo.1992). Wyo.Stat. § 1–1–109(d), by its plain and ordinary meaning, is intended to modify the damage award available to a plaintiff seeking recovery for *negligence.*

A cause of action premised on a theory of strict liability or breach of warranty is, therefore, unaffected by the principles of comparative negligence or comparative fault stated in Wyo.Stat. § 1–1–109. *Phillips*, 806 P.2d at 837. As presented in this action, the answer to certified question "A" is "NO."

B. The Limits of Comparative Fault

The answer to certified question "A" makes certified question "B" and its subparts moot. The phrasing of certified question "B" anticipates that principles of comparative negligence and comparative fault would apply to apportion damage recoveries based upon strict liability or breach of warranty and then asks if indemnity would be permitted. As we have determined, however, Wyoming law under *Phillips* rejects the application of comparative negligence or comparative fault principles from Wyo.Stat. § 1–1–109 to recoveries premised upon strict liability or breach of warranty. *Phillips*, 806 P.2d at 836–37.

Holland argues that *Phillips* should be reversed and the Wyoming Supreme Court should judicially adopt comparative fault principles for actions premised on strict liability or breach of warranty. We decline both invitations. First, *Phillips* was correctly decided. The Wyoming legislature, by its plain and unambiguous language, limited the application of Wyo.Stat. § 1–1–109 to causes of action arising out of *negligence. Phillips*, 806 P.2d at 837. Second,

judicial adoption of comparative fault principles for strict liability and breach of warranty is beyond the scope of the certified questions presented to this court which consider the availability of indemnity. *Id.* at 837–40. Third, the policy reflected in Wyoming's present system of tort law is best served by allowing alternative theories of recovery and directing damages toward the actor most able to prevent future occurrences. *See Ogle v. Caterpillar Tractor Co.*, 716 P.2d 334, 342 (Wyo.1986).

C(1). The Policy of Wyoming Tort Law

A review of the legislative and common law policy choices which have lead to the development of Wyoming tort law will provide useful guidance in addressing certified question "C" and its subparts regarding the availability of indemnity.

The legislative history of Wyoming's adoption of comparative negligence and comparative fault is embodied in the various subsections of Wyo.Stat. § 1–1–109. Prior to 1973, Wyoming accepted the common law doctrine of contributory negligence which barred a negligent plaintiff's recovery. *See, e.g., Cimoli v. Greyhound Corporation*, 372 P.2d 170, 174 (Wyo.1962) and *Johnston v. Vukelic*, 67 Wyo. 1, 213 P.2d 925 (1950). Only the innocent plaintiff recovered tort damages under the rule of contributory negligence. Commentators and scholars criticized the doctrine's all-or-nothing philosophy terming it a "chronic invalid who will not die." W. Page Keeton, *Prosser & Keeton on the Law of Torts* § 65, at 453 (5th ed. 1984). The predecessors of present subsections (a), (b) and (c) of Wyo.Stat. § 1–1–109 were adopted by the Wyoming State Legislature in 1973 to ameliorate these harsh effects of contributory negligence. 1973 Wyo.Sess. Laws ch. 28 (codified as Wyo.Stat. § 1–7.2 (1975)) (amended 1986); *Board of County Com'rs of Campbell County v. Ridenour*, 623 P.2d 1174, 1179–80 (Wyo.1981). Wyoming was one of ten states to adopt comparative negligence principles in that year during a wave of "tort reform." Victor E. Schwartz, *Comparative Negligence* § 1.1 (2d ed. 1986).

Wyoming did not totally eliminate the bar of contributory negligence by adopting a pure form of comparative negligence. Instead, the legislature's original enactment accepted a modified form of comparative negligence from Wisconsin, which permitted recovery by a negligent plaintiff if the contributory negligence "was not as great as the negligence of the person against whom recovery is sought." 1973 Wyo.Sess. Laws ch. 28 (codified as Wyo. Stat. § 1–7.2 (1975)) (amended 1986). This language placed Wyoming as a so-called "49%" state. Schwartz, *supra*, at § 2.1. Contributory negligence operated to bar a plaintiff's recovery if his or her negligence was equal to or greater than the negligence of the defendant. Otherwise, the plaintiff's recovery was reduced by the percentage of negligence assigned to his or her conduct. *Kirby Bldg. Systems v. Mineral Explorations Co.*, 704 P.2d 1266, 1273 (Wyo.1985).

### (a) *Contribution and Joint and Several Liability*

The adoption of comparative negligence also brought legislative modification and statutory authority to the common law doctrines of contribution and joint and several liability. While common law did not recognize a right of contribution, *see Convoy Co. v. Dana*, 359 P.2d 885, 887 (Wyo.1961), the 1973 statutory changes permitted the tortfeasor who had paid more than a pro rata share of common liability to compel other joint tortfeasors to pay a portion of the damages. 1973 Wyo.Sess. Laws ch. 67 (codified as Wyo.Stat. §§ 1–7.3 through 1–7.6 (1975) (amended 1977) (repealed 1986). A "joint tortfeasor" was defined as "one of two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of

them." Wyo.Stat. § 1–7.3(d) (1975) (amended 1977) (repealed 1986). The statute provided for joint and several liability among joint tortfeasors and stated the effect of a release or covenant not to sue. *Id.*

### (b) *Contribution and Indemnity*

The 1973 contribution provisions parallel sections of the Uniform Contribution Among Tortfeasors Act as promulgated by the National Conference of Commissioners on Uniform State Laws in 1939. *Compare* Unif. Contribution Among Tortfeasors Act of 1939 §§ 1–2, 12 U.L.A. 57 (1975) (act withdrawn 1955) *with* Wyo.Stat. §§ 1–7.3 (1975) (amended 1977) (repealed 1986). Specifically incorporated into the contribution provision was language retaining a right to indemnity. "Nothing in this act affects * * * [a]ny right of indemnity under existing law." Wyo.Stat. § 1–7.4 (1975) (amended 1977) (repealed 1986). This provision is similar to section 6 of the Uniform Contribution Among Tortfeasors Act as promulgated in 1939.[5]

In 1977, Wyoming recodified its general laws, including the civil procedure provisions of ·contributory negligence. 1977 Wyo.Sess. Laws ch. 188. Along with assigning new numbers, the legislature amended the language of the comparative negligence statute and adopted new language for the contribution provisions. The amendment to the comparative negligence statute required the jury to be informed of the "consequences of its determination of the percentage of negligence." Wyo.Stat. § 1–1–109(b)(iii) (1977) (amended 1986).

The 1977 legislative amendment to the contribution provision renumbered its former provisions and again, without specific reference, adopted provisions of a revised version of the Uniform Contribution

**5.** While the legislature did not specifically adopt the Uniform Contribution Among Tortfeasors Act of 1939, the adoption of language from the Act of 1939 was an unfortunate choice. The National Conference of Commissioners on Uniform State Laws withdrew the Act of 1939 from further study and revision because it had received minimal acceptance. Unif. Contribution Among Tortfeasors Act of 1955, 12 U.L.A. 59 (1975) (Commissioners Prefatory Note to 1955 Revision). Among the eight jurisdictions which had passed the 1939 Act at the time of revision, significant individual adaptation occurred which defeated the Act's operation as a uniform law. *Id.* This lack of uniformity may account for the decision of the legislature to change the text of Wyoming's Contribution Statutes in 1977. *See* 1977 Wyo.Sess.Laws ch. 188.

Among Tortfeasors Act which had been promulgated in 1955. *Compare* Unif. Contribution Among Tortfeasors Act of 1955 § 1, 12 U.L.A. 63–64 (1975) *with* Wyo.Stat. § 1–1–110 (1977) (repealed 1986). Under the revised contribution statute, a joint tortfeasor relationship existed where two or more persons became "jointly or severally liable in tort for the same injury to person or property or for the same wrongful death * * *." Wyo.Stat. § 1–1–110(a) (1977) (repealed 1986). The changes included additional language attempting to distinguish indemnity from contribution.

W.S. 1–1–110 through 1–1–113 do not impair any right of indemnity under existing law. Where one (1) tortfeasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation.

Wyo.Stat. § 1–1–110(f) (1977) (repealed 1986).

This court held the revised Wyo.Stat. § 1–1–110(f) (1977) (repealed 1986) preserved a right to indemnity in Wyoming. *Cities Service Co. v. Northern Production Co., Inc.,* 705 P.2d 321, 325 (Wyo.1985). The Wyoming Supreme Court also criticized the amendments to the contribution statutes which "tinkered" with the language without producing substantive change. *ABC Builders, Inc. v. Phillips,* 632 P.2d 925, 933–44 n. 7 (Wyo.1981).

### (c) *Comparative Fault Replaces Contribution*

In 1986, the Wyoming State Legislature again amended the comparative negligence and contribution statutes. The amendments moved Wyoming to a so-called 50% state, permitting a recovery if contributory negligence was "not more than fifty per-

cent (50%) of the total fault." Wyo.Stat. § 1–1–109(a). This amendment permitted a plaintiff whose contributory negligence was found to be 50% to recover from an equally (50%) negligent defendant. *See* Schwartz, *supra,* at § 2.1.

The more significant legislative amendment brought comparative fault to Wyoming. 1986 Wyo.Sess. Laws ch. 24 (codified as Wyo.Stat. § 1–1–109 (1988)). The comparative fault provision, Wyo.Stat. § 1–1–109(d), limited a joint tortfeasor's individual damage liability to a proportion of the dollar amount of damages "in the percentage of the amount of fault attributed * * *." to that actor.

The adoption of comparative fault was premised on the elimination of joint and several liability which the legislature accomplished with the 1986 amendments.[6]

AN ACT to amend W.S. 1–1–109; and to repeal W.S. 1–1–110 through 1–1–113 relating to civil procedure; providing that a plaintiff in a negligence action is entitled to a proportionate recovery of his damages if the plaintiff's contributory negligence is not more than fifty percent (50%) of the total fault; eliminating the doctrine of joint and several liability among joint tortfeasors; providing that each defendant is liable only to the extent of his percentage of fault as compared to all other actors whether or not parties to the action; repealing provisions relating to the right of contribution among joint tortfeasors and the effect to be given the release or covenant not to sue one of several joint tortfeasors; and providing for an effective date.

1986 Wyo.Sess. Laws ch. 24. With the 1986 changes, the legislature eliminated the right to contribution among joint tortfeasors which had been assured by the provisions borrowed from the Uniform

---

**6.** The elimination of joint and several liability as a consequence of legislative tort reform is the subject of criticism and debate. *Compare* Richard W. Wright, *Allocating Liability Among Multiple Responsible Causes: A Principled Defense of Joint and Several Liability for Actual Harm and Risk Exposure,* 21 U.C. Davis L. Rev. 1141 (1988) (arguing greater fairness in maintaining joint and several liability and then allowing tortfea-

sors who pay the plaintiff to obtain contribution or indemnity) *with* Aaron D. Twerski, *The Joint Tortfeasor Legislative Revolt: A Rational Response to the Critics,* 22 U.C. Davis. L. Rev. 1125 (1989) (maintaining that tort reform did not result from captive lawmakers responding to insurance industry lobbyists but rather was the result of considered policy choices).

Contribution Among Tortfeasors Act of 1955. Wyo.Stat. § 1–1–110 (1977) (repealed 1986). The hypothesis being that contribution is not required under comparative fault if each actor is responsible only for damages equal to and limited by the percentage of fault attributed to that actor. *See* Keeton, *supra*, at § 50.

C(2). Indemnity After Contribution Repeal

Also repealed with the 1986 amendments was the provision of the contribution statute which assured the right of indemnity under existing law. Wyo.Stat. § 1–1–110(f) (1977) (repealed 1986). The effect of this action requires an exploration of whether the legislature's repeal of the contribution statute's indemnity language or the simultaneous adoption of comparative fault altered the availability, in Wyoming, of indemnity for actions premised on tort liability.[7]

Holland and Rissler both assert that indemnity actions did not survive the legislative adoption of comparative fault in 1986. Holland supports its view based on the elimination of joint and several liability. Rissler claims the adoption of comparative negligence principles reject indemnity. Schneider challenges that the repeal of the contribution provisions did not alter the right, in Wyoming, to indemnity. Schneider asserts that contribution and indemnity are distinctive. Indemnity is a creature of common law, while contribution only existed in Wyoming because of statutory authority. The Wyoming Trial Lawyers Association, as amicus curiae, supports the

view that "the abrogation of joint and several liability and statutory rights of contribution does not effect the availability of indemnity on contractual or common law grounds."

■■■ We agree with the United States District Court for the District of Wyoming which held "indemnity is still available in Wyoming despite the repeal of contribution in 1986." Remembering that statutes preempting common law rights must be strictly construed, *Reliance Ins. Co. v. Chevron U.S.A. Inc.*, 713 P.2d 766, 770 (Wyo.1986), it is logically inconsistent to argue that the repeal of statutory authority designed to specifically preserve "indemnity under existing law" could eliminate the doctrine the statute sought to preserve. Wyo.Stat. § 1–1–110(f) (1977) (repealed 1986).

The repeal of Wyo.Stat. § 1–1–110(f) (1977) (repealed 1986) and the adoption of comparative fault cannot be seen as an implicit prohibition on indemnity; rather, it must be viewed as a realization by the legislature that under a system of comparative fault, contribution no longer served a purpose. *See Nylen v. Dayton*, 770 P.2d 1112, 1116 (Wyo.1989). The burden sharing produced by contribution was unnecessary under a comparative fault system allocating the damage recovery based upon the percentage of negligence attributed to each actor.

The reason for the inclusion of the language regarding indemnity in the contribution statute is stated by the Commissioner's Comments to the Uniform Contribution

---

7. While Schneider seeks indemnity from Holland and Rissler based upon alternative theories of indemnity obligation, the underlying action between Horowitz and Schneider from which Schneider seeks indemnity is premised solely on the negligence attributed to Schneider. Therefore, if the legislative adoption of comparative negligence or comparative fault principles abolished indemnity, Schneider would be foreclosed from proceeding with this action. *See, e.g., Brochner v. Western Ins. Co.*, 724 P.2d 1293, 1299 (Colo.1986) (holding Colorado's adoption of comparative negligence and Uniform Contribution Among Tortfeasors Act abolished actions for indemnity between joint tortfeasors); and *Allison v. Shell Oil Co.*, 113 Ill.2d 26, 99 Ill.Dec. 115, 495 N.E.2d 496 (1986) (holding that active-

passive indemnity is abolished in Illinois by adoption of comparative fault and contribution). *But see Atchison, T. & S.F. Ry. v. Lan Franco*, 267 Cal.App.2d 881, 73 Cal.Rptr. 660, 665–66 (1968) (discussing the lack of applicability of principles of comparative negligence when determining whether a right to indemnity exists). The theoretical basis for this preclusion would be that under comparative negligence and comparative fault principles, the negligent actor is responsible only for those damages attributed to that actor's relative culpability. *See Tolbert v. Gerber Industries, Inc.*, 255 N.W.2d 362, 367 (Minn.1977). Therefore, equitable shifting of the damages to another actor is not necessary.

Among Tortfeasors Act of 1955. The Commissioners explain that the indemnity language, as used in the Wyoming statute, merely attempted to clarify that in actions for indemnity, courts should not permit the person who becomes obligated to pay indemnity to seek contribution from the person obtaining indemnity. Unif. Contribution Among Tortfeasors Act of 1955 § 1, 12 U.L.A. 66 (1975) (Commissioner's Comment Subsection (f)); *Lattea v. City of Akron*, 9 Ohio App.3d 118, 458 N.E.2d 868, 878 (1982). As an example, the Commissioners explain that a master, vicariously liable for a servant's tort, could seek indemnity from the servant. However, the servant has "no possible claim" to contribution from the master. Unif. Contribution Among Tortfeasors Act of 1955 § 1, 12 U.L.A. 66 (1975) (Commissioner's Comment Subsection (f)). Therefore, the repealed statute, Wyo.Stat. § 1–1–110(f) (1977) (repealed 1986), limited the operation of contribution as adopted in Wyoming and had no effect on indemnity. The repeal of the statute did not abolish any right to indemnity which existed in Wyoming at common law. Indemnity and contribution represent mutually exclusive remedies. *Frazer v. A.F. Munsterman, Inc.*, 123 Ill.2d 245, 123 Ill.Dec. 473, 123 Ill.Dec. 473, 476, 527 N.E.2d 1248, 1251 (1988). However, in holding that a right to indemnity is preserved, we are not saying that the right exists in the same form as it did prior to the adoption of comparative negligence and particularly comparative fault. Our remaining task is to define the present availability of indemnity.[8]

## C(3). Indemnity—Overview

While indemnity principles survived the adoption of comparative negligence and

comparative fault in Wyoming, the present common law status of indemnity and its applicability is shrouded in a legal vapor more dense than the smoke produced by the burning forests of Yellowstone.[9] We now consider indemnity's status in Wyoming and consider whether implicit theoretical modifications, which necessarily resulted from adoption of comparative negligence and comparative fault principles, have altered or limited the ability to claim indemnity when an actor has been exposed to tort liability and paid damages, possibly including damages for the negligent or tortious acts of others or for liability resulting from the use of a defective product.

Initially, we recognize that indemnity has its roots in equitable principles of restitution and unjust enrichment. 2 George E. Palmer, *The Law of Restitution* § 10.6(c) (1978). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement of Restitution § 1 (1937). The traditional basis for indemnity, from tort based liability, relied on unequal fault of the actors. Palmer, *supra*, at § 10.6(c). However, as one useful text notes:

> [A]ny attempt to reconcile the numerous decisions and particularly the sweeping pronouncements often found in them, is an exercise in frustrating utility. The law as to indemnity among tortfeasors, like that of contribution among them, is in a state of development, flux and evolution, and the two, in some aspects, appear to merge[.]

1 Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, *The American Law of*

---

**8.** The nature of the case presented limits our discussion to issues involving the right to indemnity of an individual or corporation exposed to liability and required to pay damages either because of the negligent or tortious acts of others, *see* 42 C.J.S. *Indemnity* § 36 (1991), or because of claims for liability incurred from the use of a defective product. *See* 42 C.J.S. *Indemnity* § 48 (1991). Claims for indemnity relief arising from express contractual relationships, or implied contractual relationships, are discussed for background or contextual purposes only. This decision *does not* alter or limit the availability, in Wyoming, of express contractual

indemnity or implied contractual indemnity as applied to proper causes of action.

**9.** The forest fires that burned uncontrolled during the latter portion of the summer of 1988 in the Greater Yellowstone Ecosystem produced smoke which, according to news accounts of the period, lofted across much of the western and mid-western portions of the United States. Throughout Wyoming, smoke-filled skies disclosed the presence of an obscured orange or orange-yellow sun.

*Torts* § 3:26, at 479 (1983) (footnotes omitted).

### (a) *Economic Role of Indemnity*

The foundation of our inquiry must be built on an understanding of indemnity's origins and present circumstances coupled with knowledge of the relief it was designed to provide. In general, the action for indemnity was premised on the desirable shifting of liability from a party who has paid damages but who should not have had to bear the entire burden alone. 6 Marilyn Minzer, Jerome H. Nates, Clark D. Kimball & Diana T. Axelrod, *Damages in Tort Actions* § 50.21 (1989). Wyoming accepted the indemnity doctrine's shifting of damages in the seminal case of *Miller v. New York Oil Co.*, 34 Wyo. 272, 283–84, 243 P. 118 (1926).

Judge Posner provides an economic explanation of indemnity's role in shifting damages. Indemnity, he explains, provides a socially appropriate solution for "alternative-care joint-tort" cases. Richard A. Posner, *Economic Analysis of Law* § 6.8 (3rd ed. 1986). In the "alternative care" incident "optimal accident avoidance requires that only one potential injurer take care." William M. Landes & Richard A. Posner, *The Economic Structure of Tort Law* 191 (1987).[10] The rationale is that in alternative care matters "we do not want both tortfeasors to take precautions; we want the lower cost accident avoider to do so." Posner, *supra*, § 6.8. Therefore, the actor incurring the higher prevention cost from the accident obtains indemnity from the other actor. *Id.* Posner distinguished the rules of no contribution or contribution under "pro rata" or "relative fault" allocation systems as doctrines producing efficient safety incentives when applied to "joint tort" cases involving "joint care." *Id.*

"Joint care" cases are those requiring both injurers to take care thus achieving optimal accident avoidance. Landes & Posner, *supra*, at 190. Posner believes the key to understanding when indemnity is allowed and when it is denied is the economic difference between "joint care" and "alternative care" circumstances. *Id.* at 205.

### (b) *Limitations on Availability of Indemnity*

The Restatement of Restitution § 76 (1937) states a general rule of indemnity:

> A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct.

While the "modern trend concerning the right to indemnity is to look to principles of equity," in *Stuck v. Pioneer Logging Machinery, Inc.*, 279 S.C. 22, 301 S.E.2d 552, 553 (1983), common law utilized a familiar maxim identifying and limiting the availability of indemnity. " 'Indemnity springs from a contract, expressed or implied * * *.' " *Wyoming Bank and Trust Co. v. Waugh*, 606 P.2d 725, 730 n. 3 (Wyo. 1980) (quoting *Chicago and Northwestern Railway Co. v. Rissler*, 184 F.Supp. 98, 101 (D.Wyo.1960)). As a departure point, the maxim discloses the need for an independent legal relationship between the party seeking indemnity and the party from whom indemnity is sought. *Frazer*, 123 Ill.Dec. at 476, 527 N.E.2d at 1251; *National Union Fire Ins. Co. v. A.A.R. Western Skyways, Inc.*, 784 P.2d 52, 54–55 (Okl. 1989). The independent legal relationship is one " 'under which the indemnitor owes a

---

**10.** The economic theories used by Judge Posner build upon a foundation introduced into tort law by Judge Learned Hand. In *United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir.1947), Judge Hand expressed his famous negligence formula. Judge Hand described negligent conduct as occurring when the cost of precautions ($B$) is less than the product of the probability of occurrence ($P$) and the magnitude of loss ($L$). *Id.* The mathematical expression is $B < PL$. While various other factors including transaction costs and what Judge Posner terms "margin" costs, slight increases in safety which yield no social gain or produce a social loss, limit the functional utility of the Hand formula, its basic approach provides useful policy guidance. Posner, *supra*, at § 6.1. Judge Posner's more expansive approach, and mathematical modeling, demonstrates a rationale for tort law policy choices which is precise and persuasive.

duty either in contract or tort to the indemnitee apart from the joint duty they owe to the injured party.' " *National Union Fire Ins. Co.*, 784 P.2d at 55 (quoting *Peak Drilling Co. v. Halliburton Oil Well Cementing Co.*, 215 F.2d 368, 370 (10th Cir. 1954)). The Restatement of Restitution authors explain that the duty to pay indemnity may be created by contractual obligation, quasi-contractual obligation or tort. Restatement of Restitution § 76 cmt. b (1937).

In *Richardson Associates v. Lincoln–Devore, Inc.*, 806 P.2d 790 (Wyo.1991), this court acknowledged three classifications for indemnity actions which reflect the prior relationship of the parties, frame the nature of the duties between the parties and limit the availability of indemnity. Express indemnity is derived from the specific language of a contract. *Wyoming Johnson, Inc. v. Stag Industries, Inc.*, 662 P.2d 96, 99 (Wyo.1983); *Mountain Fuel Supply Co. v. Emerson*, 578 P.2d 1351, 1358 (Wyo. 1978). Implied contractual indemnity, also known as implied in fact indemnity, stems from the relationship, contractual or legal, implied between the parties. *Pan American Petroleum Corp. v. Maddux Well Service*, 586 P.2d 1220, 1226 (Wyo.1978); *Vickery v. Reliable Elec. Co.*, 703 F.2d 488, 491 (10th Cir.1983) (applying Wyoming law). Finally, equitable implied indemnity, also termed implied in law indemnity or common law indemnity, is created by a relationship implied in law between the person seeking indemnity and the person from whom indemnity is sought for a negligent or tortious act. *See Miller*, 34 Wyo. at 283–95, 243 P. 118, and 42 C.J.S., *supra*, at § 36.

Equitable or implied in law indemnity forms the basis of Schneider's indemnity claim against Rissler and the claims against Holland premised on theories of recovery for negligence and strict liability. Schneider's claims against Holland, premised on breach of warranty, require evaluation both as an equitable indemnity action and as an action premised on an implied contractual indemnity. As a result, we shall consider the availability of indemnity in each of these instances individually.

## C(4). Equitable Implied Indemnity and Culpability

### (a) The Active/Passive Distinction

Equitable implied indemnity's growth may be directly traced to a reaction to the common law prohibition of contribution. *Frazer*, 123 Ill.Dec. at 477, 527 N.E.2d at 1252. Courts struggled to do equity in situations which would otherwise be constrained since implied contractual indemnity actions were limited to circumstances where the party seeking indemnity, "without active fault on his part," was exposed to liability and forced to pay damages. *Wyoming Johnson, Inc.*, 662 P.2d at 102 (*quoting Eazor Exp., Inc. v. Barkley*, 441 Pa. 429, 272 A.2d 893, 895 (1971)); *accord Miles v. Southeastern Motor Truck Lines*, 295 Ky. 156, 173 S.W.2d 990 (1943); *Hanscome v. Perry*, 75 Md.App. 605, 542 A.2d 421, 427 (1988); and 42 C.J.S., *supra*, at § 32.

The implied contractual indemnity action is premised on the breach of the contract between the party seeking indemnity and the party from whom indemnity is sought. The rationale is that " 'a contract under which the indemnitor undertook to do work or perform services necessarily implied an obligation to do the work involved in a proper manner and to discharge foreseeable damages resulting from improper performance absent any participation by the indemnitee in the wrongful act precluding recovery.' " *Bear Creek Planning Committee v. Title Ins. & Trust Co.*, 164 Cal. App.3d 1227, 211 Cal.Rptr. 172, 178 (1985) (quoting *Great Western Furniture Co., Inc., of Oakland v. Porter Corp.*, 238 Cal. App.2d 502, 517, 48 Cal.Rptr. 76 (1965)). *See also Considine Co., Inc. v. Shadle, Hunt & Hagar*, 187 Cal.App.3d 760, 232 Cal.Rptr. 250, 257 (1986). As a result, distinctions between active or passive negligence are not appropriate in implied contractual indemnity actions. *Bear Creek Planning Committee*, 211 Cal.Rptr. at 180. The solution to this problem required the broad application of equitable implied indemnity.

Equitable implied indemnity considered the relative fault of the parties allowing recovery of indemnity by a party who was only "passively" or "constructively" negligent. *Frazer*, 123 Ill.Dec. at 477, 527 N.E.2d at 1252; 42 C.J.S., *supra*, at § 37. Typically, passive negligence, for purposes of indemnity, consisted of the failure, of the party seeking indemnity, "to discover or prevent the negligence or misconduct of another when an ordinarily prudent person would have done so." *Tolbert v. Gerber Industries, Inc.*, 255 N.W.2d 362, 367 (Minn.1977). Active negligence, precluding the availability of indemnity, "is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had agreed to perform." *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal.3d 622, 119 Cal.Rptr. 449, 453, 532 P.2d 97, 101 (1975). The relative fault origins of equitable implied indemnity created the burdensome, inconsistent and often criticized nomenclature of "active" or "passive" negligence.

> With a little ingenuity in phrasing, negligence can be made to be either "active" or "passive" as suits the writer. For example, "driving an automobile with bad brakes" or "running through the stop sign" or "using a defective crane" might be said to be "active" negligence, while "omitting maintenance of brake fluid level" or "neglecting to apply the brakes" or "failing to inspect the crane in order to discover its defectiveness" might be "passive" negligence—these are the same acts or omissions, but the outcome depends not upon the facts, but upon how someone chooses to characterize them.

*Missouri Pac. R. Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466, 471 (Mo.1978).

*Miller* provides a useful illustration of the operation of the varied forms of indemnity and the vague applicability of the "active" or "passive" negligence description. Miller was a landlord in Casper, Wyoming who paid a settlement, after trial, in a wrongful death action brought by the administrator of the estate of a former tenant in Miller's apartment. *Miller*, 34 Wyo. at 276–77, 243 P. at 119. The tenant was asphyxiated by carbon dioxide fumes from an improperly installed gas water heater. Miller sued New York Oil for indemnity alleging that the company had negligently installed the water heater. Miller and New York Oil did have a contractual relationship for the installation of the water heater, so, the court could have treated the action as one for implied contractual indemnity and denied Miller indemnity since he was guilty of wrongful conduct in failing to discover a blocked ventilation pipe or possibly failing to warn his tenants. However, the rule applied by the court permitting indemnity was based on equitable implied indemnity.

> "When two parties, acting together, commit an illegal or wrongful act, the party who is held responsible in damages for the act cannot have indemnity or contribution from the other, because both are equally culpable, or *particeps criminis*, and the damage results from their joint offense. This rule does not apply where one does the act or creates the nuisance, and the other does not join therein, but is thereby exposed to liability and suffers damage. He may recover from the party whose wrongful act has thus exposed him. In such case the parties are not in *pari delicto* as to each other, though as to third persons either may be held liable."

*Miller*, 34 Wyo. at 283, 243 P. at 121 (quoting *Gray v. Boston Gas Light Co.*, 114 Mass. 149, 154 (Mass.1873)). New York Oil contended Miller could not recover indemnity because both were joint tortfeasors guilty of wrongdoing. This court refused to recognize the rule preventing indemnity recovery among joint tortfeasors finding that many exceptions existed to the general rule. New York Oil also claimed no indemnity recovery should be allowed since Miller was "adjudged guilty of negligence" in the wrongful death action. However, the court said Miller's negligence was "constructive rather than actual." *Miller*, 34 Wyo. at 284, 243 P. at 121. Miller, according to the court, had a right to indemnity.

The Posner formulations of "joint care" and "alternative care" can be directly applied to *Miller*, and another Wyoming case which may seem contradictory at first, *Convoy*, 359 P.2d 885. In *Miller*, the court refused to recognize the rule that indemnity is not available between joint tortfeasors. However, in *Convoy*, the court seemingly turned-about saying "if both parties are joint tort-feasors or are in *pari delicto*, as where each of the parties contributes to cause an injury, no right of indemnity exists in either party." [11] *Convoy*, 359 P.2d at 887. Under Posner's distinctions, in a situation where two actors are, as *Miller* described it, "equally culpable," or as *Convoy* described, "joint tortfeasors," they function under the constraints of Posner's "joint care." Indemnity is not available where both actors have a "joint care" obligation to avoid the injury. Landes & Posner, *supra*, at 210.

*Convoy* illustrates the operation of this principle. In *Convoy*, the court ruled the owner of a truck with two failed brake systems could not get indemnity from a repair shop owner for damages paid to a man injured when a mechanic moved the truck. The court ruled the "joint negligence" of the truck owner and the repair shop caused the injuries. *Convoy*, 359 P.2d at 887. In Posner's terms, "optimal accident avoidance" required both the truck owner and the mechanic take care. Landes & Posner, *supra*, at 210. However, when the actors' culpability varies, they are not "in *pari delicto*," and the situation is "alternative care" under Posner's description. Applied to *Miller*, Posner's theory projects that the "lower-cost avoider of the accident," in the fact-finder's determination, would have been New York Oil, the company that negligently installed the wa-

ter heater with improper ventilation. Landes & Posner, *supra*, at 206. As such, the indemnity awarded in *Miller* based on the higher relative fault of New York Oil would then be available. *Miller*, 34 Wyo. at 283, 243 P. at 121.

The *Miller* court's determination that the negligence of the party seeking indemnity was "constructive rather than actual" accepted the relative fault distinctions of equitable implied indemnity in Wyoming. While the linguistic references to "constructive" and "actual" negligence have been more commonly replaced by "active" and "passive" negligence, their use to determine availability of indemnity is the same. *See* 42 C.J.S., *supra* at § 37. The difficulty with the application of equitable applied indemnity is evidenced by the lack of development in the concept following *Miller*. Equitable implied indemnity has been presented as an issue on appeal in some cases. *See, e.g., Richardson Associates*, 806 P.2d at 812–14. However, the difficulty with, and lack of, explanatory case law is evidenced by the need for certification of these questions by the United States Court of Appeals for the Tenth Circuit. We believe clarification is needed.

(b) *The New Standard—Indemnity's Availability*

■ The obvious starting point considers when equitable implied indemnity is available between tortfeasors. *See, e.g., Rees v. Dallas County*, 372 N.W.2d 503, 505 (Iowa 1985) and *Home Ins. Co. v. Jones & Lamson Div. of Waterbury Farrell*, 144 Mich. App. 91, 373 N.W.2d 249, 252 (1985), *rev'd on other basis* 424 Mich. 890, 381 N.W.2d 729 (1986). We adopt the views of the Restatement of Torts (Second) § 886B (1979):

> In other situations, "joint tortfeasor" may also be used in a broader sense to include " 'all cases where there is joint liability for a tort, whether the acts of those jointly liable were concerted, merely concurrent, or even successive in point of time.' " *Tolbert*, 255 N.W.2d at 366 n. 1 (*quoting* Robert A. Leflar, *Contribution and Indemnity Between Tortfeasors*, 81 U.Pa.L.Rev. 130, 131 n. 9 (1932)).

---

**11.** Neither *Miller* nor *Convoy* defined the term "joint tortfeasors." Joint tortfeasors, as a term of art, refers to "two or more persons jointly or severally liable in tort for the same injury to person or property." Black's Law Dictionary 836 (6th ed. 1990); *see Garner v. Hickman*, 709 P.2d 407, 413 (Wyo.1985). Under this standard, the failure to act in concert, as in an "alternative care" situation, removes a tortfeasor from the *Convoy* preclusion against recovery of indemnity by a joint tortfeasor.

(1) If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability.

(2) Instances in which indemnity is granted under this principle include the following:

 (a) The indemnitee was liable only vicariously for the conduct of the indemnitor;

 (b) The indemnitee acted pursuant to directions of the indemnitor and reasonably believed the directions to be lawful;

 (c) The indemnitee was induced to act by a misrepresentation on the part of the indemnitor, upon which he justifiably relied;

 (d) The indemnitor supplied a defective chattel or performed defective work upon land or buildings as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect;

 (e) The indemnitor created a dangerous condition of land or chattels as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect;

 (f) The indemnitor was under a duty to the indemnitee to protect him against the liability to the third person.

Subsection (1) states a "broad general principle" of indemnity availability. Restatement of Torts (Second), *supra,* at § 886B cmt. c. The Restatement adopts a definition of "joint tortfeasor," Restatement of Torts (Second), *supra* at § 886B cmt. b, making a tortfeasor liable for indemnity even when no action has been brought against that actor by the injured original plaintiff:

The rule stated in Subsection (1) applies to all "joint tortfeasors," in the sense of two or more persons who are liable to the same person for the same harm. It is not necessary that they act in concert or in pursuance of a common design, nor is it necessary that they be joined as defendants. The rule stated applies to all torts, including not only negligence but also misrepresentation, defamation, injurious falsehood, nuisance or any other basis of tort liability.

Restatement of Torts (Second), *supra,* at § 886A cmt. b.

■ Subsection (2) details a number of instances where there is a "general recognition that indemnity should be granted." Restatement of Torts (Second), *supra,* at § 886B cmt. d. These are situations when "alternative care" obligations exist among the actors. Under these formulations, Schneider's allegations state claims for recovery against Holland for supplying a defective chattel which Schneider failed to discover, Restatement of Torts (Second), *supra,* at § 886B(2)(d), and against Rissler for creating a dangerous condition which Schneider failed to discover, Restatement of Torts (Second), *supra,* at § 886B(2)(d). Equitable implied indemnity actions under Restatement of Torts (Second), *supra,* at § 886B may be premised on negligence, strict liability or breach of warranty. The nature of the indemnity relief available will differ depending upon the theory of liability expressed.

(c) *Comparative Partial Indemnity For Actions Premised On Negligence*

Traditionally, indemnity shifted the entire loss the indemnitee sustained to the indemnitor.[12] Schwartz, *supra,* at § 16.9. However, Restatement of Torts (Second), *supra* at § 886B cmt. m recognizes that influential state courts, in the interest of attaining justice, have developed a doctrine of " 'partial indemnity,' with the proportion of responsibility of the parties depending upon the relative percentages of fault." We believe sound policy choices and the legislative acceptance of comparative fault

---

**12.** As framed in Restatement of Torts (Second), *supra,* at § 886B(2), "[t]he indemnitor is the party against whom indemnity is sought. The indemnitee is the party who is seeking to be indemnified." Restatement of Torts (Second), *supra,* at § 886B cmt. b.

in Wyoming argue in favor of modifying the all-or-nothing rule for equitable implied indemnity actions premised on a negligence theory of recovery. The modification we adopt also eliminates the confusing separation of active and passive negligence from the relative fault determination.

Wyoming has previously accepted partial indemnity recoveries in one context. In *Cities Service Co.*, 705 P.2d at 328–30, this court reaffirmed a holding that, under Wyo.Stat. § 30–1–131 (1983), express indemnity agreements in the oil and gas industry could not, as a matter of public policy, " *'relieve the indemnitee from loss or liability for his own negligence.'* " *Id.* at 329 (emphasis in original). *See Emerson*, 578 P.2d 1351. However, the court held that partial indemnity would be allowed "to the extent that it [the agreement] indemnifies [the indemnitee] for damage it may suffer because of the negligence of [the indemnitor] in its performance under the agreement, it is valid and enforceable." *Cities Service Co.*, 705 P.2d at .329. The public policy furthered by allowing recovery of partial indemnity was increased safety in the work place. "The holding of this court results in each party being responsible for its own activities and liable for loss and damage caused by its own failure to exercise reasonable care in its operations and furthers this beneficial public policy." *Id.* at 330. In an economic analysis, the court found each party's potential liability would contribute "a considerable incentive to avoid industrial accidents and injuries." *Id.*

Indemnity actions are merely part of "a rich expositional refinement of the principle of fairness" in which "we each promise all others that we will be liable for the damage which our own negligence in the undertaking has caused." *Missouri Pac. R. Co.*, 566 S.W.2d at 468–69, 469 n. 4.

Analyzed without regard to the title of the action and nature of damages, suits for active-passive indemnity are in reality actions for ordinary negligence to recover damages from the indemnitor; and indemnitee's conduct is considered "passive" if the indemnitee was not contributorily negligent * * * or if the indemnitor squandered the last clear chance * * *.

*Allison v. Shell Oil Co.*, 113 Ill.2d 26, 99 Ill.Dec. 115, 119, 495 N.E.2d 496, 500 (1986). The traditional indemnity doctrine's shifting of the entire loss from one actor to another may be another example of a legal rule that "has continued to prevail in this country by sheer inertia rather than by reason of any intrinsic merit." *United States v. Reliable Transfer Co., Inc.*, 421 U.S. 397, 410, 95 S.Ct. 1708, 1715, 44 L.Ed.2d 251 (1975) (holding the admiralty rule of divided damages should be replaced by a rule allocating damages proportionately based on comparative fault).

Other jurisdictions have witnessed considerable development in the availability of partial indemnity. *See* J.R. Kemper, Annotation, *Comment Note—Contribution or Indemnity Between Joint Tortfeasors On Basis Of Relative Fault*, 53 A.L.R.3d 184 (1973 & Supp.1992) (collecting cases). One of the earliest and most influential decisions is *American Motorcycle Ass'n v. Superior Court of Los Angeles County*, 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978). In that case, a boy paralyzed in a motorcycle race sued multiple parties, including a race sponsor. The race sponsor sought equitable implied indemnity from the boy's parents premised on their negligence in permitting the boy to participate in a dangerous sport. The California Supreme Court determined that traditional 100% indemnity recovery suffers from the same " 'all-or-nothing' deficiency as the discarded contributory negligence doctrine and falls considerably short of fulfilling [the contributory negligence doctrine's] goal of 'a system under which liability for damage will be borne by those whose negligence caused it in direct proportion to their respective fault.' " *Id.* 146 Cal.Rptr. at 190, 578 P.2d at 907 (*quoting Li v. Yellow Cab. Co. of California*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 864, 532 P.2d 1226, 1232 (1975)).

[T]he equitable indemnity doctrine originated in the common sense proposition that when two individuals are responsible for a loss, but one of the two is more

culpable than the other, it is only fair that the more culpable party should bear a greater share of the loss. Of course, at the time the doctrine developed, common law precepts precluded any attempt to ascertain comparative fault; as a consequence, equitable indemnity, like the contributory negligence doctrine, developed as an all-or-nothing proposition.

*American Motorcycle Ass'n,* 146 Cal.Rptr. at 191–92, 578 P.2d at 908–09. Noting the vagueness in the "active" or "passive" culpability standards, the court held the principal difficulty with traditional all-or-nothing indemnity doctrine has been its effect of preventing courts from "reaching a just solution in the great majority of cases in which equity and fairness call for an apportionment of loss between the wrongdoers in proportion to their relative culpability, rather than the imposition of the entire loss upon one or the other tortfeasor." *Id.* 146 Cal.Rptr. at 193, 578 P.2d at 910. Finding the proper balance in a system of partial indemnity, the court held equitable indemnity would be modified permitting "a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis."[13] *Id.,* 146 Cal. Rptr. at 196, 578 P.2d at 912.

Wyoming's statutory modification of contributory negligence and implicit incorporation of the doctrine of last clear chance into the percentage of negligence determination replaced the harshness of the former system. Wyo.Stat. § 1–1–109; *Ridenour,* 623 P.2d at 1179–80. Specifically incorporated into the jury's determination of the various parties' comparative negligence and comparative fault is a consideration of the nature of the negligent conduct. "[P]articular care should be taken when multiple plaintiffs or claims are present so that only the negligence that proximately causes any particular injury is considered by the jury when apportioning fault as to that injury. Passive and active negligence must be distinguished." *Ridenour,* 623

P.2d at 1192. In light of the legislature's desire to apportion damages for negligence actions, requiring equitable implied indemnity actions premised on negligence to perpetuate a theory of fault that only one person is ultimately responsible for any injury would be an example of contrarian philosophy. In *Kennedy v. City of Sawyer,* 228 Kan. 439, 618 P.2d 788, 802 (1980), the Kansas Supreme Court, while commenting on the Minnesota Supreme Court's decision in *Tolbert,* 255 N.W.2d 362, stated a position which we adopt as applied to equitable implied indemnity actions premised on negligence:

> [A]ny indemnity claim having as its basis a disproportion of culpable conduct becomes inequitable and unfair when a comparative liability mechanism exists for precise determination of degrees of causal responsibility. There is no reason in a comparative liability jurisdiction to hold a defendant, the proposed indemnitor, liable for damages in disproportion to his causal fault. Similarly, there is no reason to deny another defendant, the proposed indemnitee, a right of liability reduction when his fault, although minimal in terms of causal involvement, may nevertheless b[e] characterized as "active."

■ We hold that indemnity liability is to be allocated among the parties proportionately to their comparative degree of fault in actions for equitable implied indemnity premised on the negligent breach of a duty between the indemnitor and the indemnitee. *See, e.g., American Motorcycle Ass'n,* 146 Cal.Rptr. 182, 578 P.2d 899; *Tolbert,* 255 N.W.2d 362; *Missouri Pac. R. Co.,* 566 S.W.2d 466; *Dole v. Dow Chemical Co.,* 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972). Under this modified or partial form of equitable implied indemnity, the distinctions of "active" and "passive" negligence, while no longer determinative of the

---

**13.** The Wyoming Supreme Court has previously expressed its approval of the rule in *American Motorcycle Ass'n.* In *Chrysler Corp. v. Todorovich,* 580 P.2d 1123, 1131 (Wyo.1978), Justice Thomas, writing for the majority, said "the Supreme Court of California reached the proper conclusion in developing a system of equitable indemnity or contribution under the common law."

ability to seek indemnity,[14] are factors to be weighed by the jury in assessing the percentage of fault of the parties. Typically, a jury would be instructed, in a third-party action, that if the third-party defendant is found to have performed certain acts or omissions constituting negligence for which indemnity is permitted as a matter of law, Restatement of Torts (Second), *supra* at § 886B(2), and those acts or omissions contributed to cause the injuries and damage to the original plaintiff, then the third-party plaintiff should be awarded partial indemnity. *Missouri Pac. R. Co.*, 566 S.W.2d at 472. The partial indemnity award is a proportion of the total sum paid by the third-party plaintiff to the original plaintiff corresponding to the degree of fault of the third-party defendant. *Id.*

### (d) *Procedural Issues*

Under ideal circumstances, equitable implied indemnity claims will be determined as cross-claims, W.R.C.P. 13, or third-party proceedings, W.R.C.P. 14, while the original plaintiff seeks damages from all causally responsible actors in a single proceeding. *See also* F.R.C.P. 13 and 14. However, the ideal of a single proceeding is not always achieved. In Wyoming, two reasons are immediately apparent for additional proceedings.

The first reason for additional indemnity proceedings is that Wyoming has not accepted the "one action rule" adopted by some states to limit a plaintiff's right to sue additional causally responsible parties in tort. David Polin, Annotation, *Comparative Negligence: Judgment Allocating Fault in Action Against Less Than All Potential Defendants as Precluding Sub-*

sequent *Action Against Parties Not Sued in Original Action*, 4 A.L.R.5th 753 (1992) (collecting cases). Therefore, a plaintiff in Wyoming, subject to the limitations on joinder of parties stated in W.R.C.P. 19, may choose to bring individual tort actions, for jurisdictional or tactical reasons. *See also* F.R.C.P. 19. As an example, under the present facts, Horowitz sued Schneider in federal court in the original proceeding. Horowitz could have chosen to sue Rissler in a state court, simultaneously or at some later time, alleging negligence.[15] An action by Horowitz against Holland may have also been conceivable, based upon products liability theories.[16] Either Rissler or Holland, if liability incurred, could have chosen to seek indemnity from Schneider in these possible later actions.

■ Settlements represent a second reason for additional indemnity proceedings. While the tortfeasor who settles is free to sue any non-settling tortfeasor for equitable implied indemnity, *Bolamperti v. Larco Mfg.*, 164 Cal.App.3d 249, 210 Cal.Rptr. 155, 159 (1985), the settling tortfeasor incurs some special burdens as the party seeking indemnity. The party seeking indemnity must establish that the settlement was made in good faith to discharge a potential or actual liability. *Pan American Petroleum Corp.*, 586 P.2d at 1225 (holding reasonableness of settlement amount must be shown and if indemnitor declined to approve settlement or assume defense, indemnitee is required to prove potential liability; otherwise, if no opportunity to approve or defend was given, indemnitee must show actual liability to the original plaintiff); *American Home Assur. Co. v. Cessna Aircraft Co.*, 551 F.2d 804,

---

**14.** Under the former "active" or "passive" distinctions, formality in pleading could have been determinative in indemnity proceedings. The original plaintiff's complaint alleging "active" negligence would have been sufficient to prevent a third-party plaintiff from seeking indemnity in some jurisdictions. *See, e.g., Beck v. Westphal*, 141 Mich.App. 136, 366 N.W.2d 217 (1984).

**15.** At oral argument, the parties to the present appeal indicated that Horowitz did not file any further actions and the applicable statute of limitations barred any further attempts at relief

against these parties. Wyo.Stat. § 1–3–105 (1988).

**16.** Without deciding, we note since Horowitz was not a purchaser or user of Holland's product, recovery could have been subject to dispute, particularly under strict liability. *See* P.G. Reiter, Annotation, *Products Liability: Extension Of Strict Liability In Tort To Permit Recovery By A Third Person Who Was Neither a Purchaser Nor User Of Product*, 33 A.L.R.3d 415 (1970) (collecting cases).

808 (10th Cir.1977) (determining that it is a question of fact whether the party seeking indemnity was justified in making a fair and reasonable settlement prior to jury verdict). Without a judicial determination of liability, the party seeking indemnity also has to prove that the wrongful conduct of the party from whom indemnity is sought created the claim against the indemnitee. *Central Motor Parts Corp. v. E.I. duPont deNemours & Co., Inc.*, 251 N.J.Super. 5, 596 A.2d 759, 763 (1991). *See Fairbanks North Star Borough v. Kandik Const., Inc. and Associates*, 823 P.2d 632, 636 (Alaska 1991) (explaining distinctions between causation in negligence action and causation in implied contractual indemnity action).

The wrongful conduct component can prove especially difficult. In *Hamilton v. Volkswagen of America, Inc.*, 125 N.H. 561, 484 A.2d 1116, 1117 (1984), Justice Souter, writing at the time for the Supreme Court of New Hampshire, denied a third-party claim for indemnity premised on strict liability, negligence and warranty. Hamilton was sued for negligence by his wife after he lost control of their car on a snow-covered New Hampshire highway and hit another vehicle. Hamilton filed a third-party action seeking indemnity from Volkswagen and a dealer for failing "to manufacture and sell a car capable of withstanding a low-speed collision without serious damages." *Id.*, 484 A.2d at 1117–18. Applying the limitations of the right to indemnity present in New Hampshire law, Justice Souter determined the indemnity claims could not stand because the underlying action did not claim any liability against Hamilton based upon the fault of Volkswagen. *Id.*, 484 A.2d at 1118.

■ Certified question "C" in subsection "i" specifically inquires whether Wyoming law permits an actor whose failure to inspect contributed to a third party's injuries to obtain indemnity from those who "created or were otherwise directly responsible for the conditions that caused the third party's injuries." As modified by the discussion in this opinion, adopting comparative indemnity for equitable implied indem-

nity actions premised on negligence, the answer is "YES."

C(5). Strict Liability

Certified question "C" in subsection "ii" inquires about the availability of indemnity for actions premised on the two product liability theories, strict liability in tort and breach of warranty. *See* Keeton, *supra*, at §§ 97–98. At issue are Schneider's theories of recovery against Holland based upon the sale of the alleged defective hitch. We shall consider each action separately, beginning with the availability of equitable implied indemnity for actions premised on strict liability in tort.

Wyoming's acceptance of strict liability as an independent cause of action introduced economic analysis to tort law:

When a defective article enters the stream of commerce and an innocent person is hurt, it is better that the loss fall on the manufacturer, distributor or seller than on the innocent victim. This is true even if the entities in the chain of production and distribution exercise due care in the defective product's manufacture and delivery. They are simply in the best position to either insure against the loss or spread the loss among all the consumers of the product.

*Ogle*, 716 P.2d at 342. The risk allocation theory stated in *Ogle* may also be termed a "cheapest cost-avoider" criterion for strict liability. Stephen G. Gilles, *Negligence, Strict Liability, and the Cheapest Cost–Avoider*, 78 Va.L.Rev. 1291 (1992). Under this theory, the "cheapest cost-avoider" is the person who could avoid the accident at the lowest cost. *Id.* at 1306. *See* Landes & Posner, *supra*, at 54–84.

The risk allocation concept means that strict liability is not based on "fault." *McLaughlin v. Michelin Tire Corp.*, 778 P.2d 59, 64 (Wyo.1989); *Koehring Mfg. Co. v. Earthmovers of Fairbanks, Inc.*, 763 P.2d 499, 503 (Alaska 1988). Instead of considering each actor's negligence or fault, the person most able to avoid accidents, usually the assembler or manufacturer of the failed product or component, is held liable for the cost of the accident.

Keeton, *supra,* at § 98. "It is a well settled principle that a manufacturer is under a non-delegable duty to make a product that is reasonably safe; it may not delegate that duty to the dealer, user or purchaser of the product." *Simpson v. General Motors Corp.,* 118 Ill.App.3d 479, 74 Ill.Dec. 107, 111, 455 N.E.2d 137, 141 (1983), *aff'd* 108 Ill.2d 146, 90 Ill.Dec. 854, 483 N.E.2d 1 (1985). Therefore, under strict liability, all the parties in the chain of distribution are held liable despite their exercise of due care. *Ogle,* 716 P.2d at 342.

▇ Equitable implied indemnity provides the basis for a shifting of liability under product liability theories. *Angelus Associates Corp. v. Neonex Leisure Products, Inc.,* 167 Cal.App.3d 532, 213 Cal. Rptr. 403, 404 (1985). Where no express indemnity contract exists between the parties, the right to indemnity is " 'based upon the equitable concept of implied *noncontractual* indemnity. * * * ' " *Id.,* 213 Cal. Rptr. at 404 n. 4 (*quoting Davis v. Air Technical Industries, Inc.,* 22 Cal.3d 1, 148 Cal.Rptr. 419, 420 n. 1, 582 P.2d 1010, 1011 n. 1 (1978)) (emphasis in original).

The availability of equitable implied indemnity for actions premised on strict liability in tort is governed by Restatement of Torts (Second), *supra,* at § 886B. Under subsection (d), indemnity is available from the supplier of a defective product when the product failure makes both the indemnitee and the indemnitor liable to a third person and the indemnitee innocently or negligently failed to discover the defect.

Indemnity, under strict liability, permits an allocation of the risk of loss among the parties constituting the chain of distribution to the party best able to control loss and distribute it. *Promaulayko v. Johns Manville Sales Corp.,* 116 N.J. 505, 562 A.2d 202, 204–05 (1989). As the head of the product distribution chain, the manufacturer is the party most likely to indemnify as it is best able to "bear the cost of defective products and distribute that cost most equitably throughout society." *Koehring Mfg. Co.,* 763 P.2d at 503. Typically, a retailer or a seller of a defective product who has paid a judgment seeks indemnity from a distributor or manufacturer, a person higher up the distribution chain. *See, e.g., Texaco, Inc. v. McGrew Lumber Co.,* 117 Ill.App.2d 351, 254 N.E.2d 584, 588 (1969) (affirming seller's right to indemnity from distributor) and Debra T. Landis, Annotation, *Products Liability: Seller's Right To Indemnity From Manufacturer,* 79 A.L.R.4th 278 (1990) (collecting cases).

The indemnity doctrine's shifting of loss is not limited to those in the distribution chain. Howard J. Alperin, Annotation, *Products Liability: Right of Manufacturer or Seller to Contribution or Indemnity From User of Product Causing Injury or Damage to Third Person, and Vice Versa,* 28 A.L.R.3d 943 (1969) (collecting cases). In the leading case of *Wagner v. Beech Aircraft Corp.,* 37 Wash.App. 203, 680 P.2d 425 (1984) (*Wagner II*), the court recognized the right of a product user and owner to recover indemnity premised on strict liability from a manufacturer and repairer. The parties seeking indemnity were the estate of the pilot and the owners of a single engine aircraft that crashed killing the pilot and injuring two occupants. *See Wagner v. Flightcraft, Inc.,* 31 Wash. App. 558, 643 P.2d 906, 909 (1982) (*Wagner I*) (summarizing facts). A defective carburetor design and defective repair work caused the crash. *Id.,* 643 P.2d at 909. After a jury in *Wagner I* found the carburetor manufacturer and repairer liable for the injuries from the accident, the court in *Wagner II* considered whether indemnity would be permitted premised on strict liability. *Wagner II,* 680 P.2d at 429. The court held that indemnification was appropriate under strict liability even when the party seeking indemnity might be considered actively negligent. *Id. See, e.g., Stuck,* 301 S.E.2d 552 (holding truck purchaser may recover indemnity from seller) and *Suvada v. White Motor Co.,* 32 Ill.2d 612, 210 N.E.2d 182 (1965), *overruled on other grounds Dixon v. Chicago and North Western Transp. Co.,* 151 Ill.2d 108, 176 Ill.Dec. 6, 601 N.E.2d 704 (1992) (product user entitled to indemnity for brake system failure).

The court in *Wagner II* recognized that indemnity under strict liability is not premised on any theory of "active" or "passive" negligence, but reflects a "sound public policy consideration that the manufacturer who places a product in the stream of commerce for use by the general public is best able to bear the risk of loss resulting from the defective product." *Wagner II*, 680 P.2d at 429. The Supreme Court of Illinois further developed this concept in *Liberty Mut. Ins. Co. v. Williams Mach. & Tool Co.*, 62 Ill.2d 77, 338 N.E.2d 857 (1975). The court considered whether an adjustable work platform assembler had a right to indemnity from the manufacturer of a defective valve for damages paid to settle claims after a platform collapsed. Considering the purpose of strict liability as risk allocation, the court determined that the negligence is irrelevant for determining liability. *Id.*, 338 N.E.2d at 860 (citing cases). While "active" negligence would not bar indemnification, the court determined that distinctions of "primary" or "secondary" liability were inappropriate for strict liability. *Id.*, 338 N.E.2d at 861. "[P]erpetuation of ordinary negligence and indemnity concepts in the context of strict liability actions does not recognize the unique nature of such actions and the fundamental differences underlying strict liability and negligence law." *Id.*

The court in *Liberty Mut. Ins. Co.* determined that equitable implied indemnity premised on strict liability would be unavailable in the same instances commonly applied to strict liability in tort. *Id.*, 338 N.E.2d at 860. Assumption of risk, as distinguished from contributory negligence, is a bar to recovery under Section 402A strict liability:

> Since the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases (see § 524) applies. Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.

Restatement of Torts (Second) § 402A cmt. n (1965). Recovery of equitable implied indemnity premised on strict liability is barred by assumption of the risk. *Liberty Mut. Ins. Co.*, 338 N.E.2d at 860; *see also Wagner II*, 680 P.2d at 430 (holding assumption of the risk, such as discovery of the defective product or appreciation of its danger and continuing to use it, would prevent indemnity recovery). Misuse of a product by using it for an unintended or unforeseeable purpose would also bar indemnity as it bars recovery under strict liability. *Liberty Mut. Ins. Co.*, 338 N.E.2d at 860. The Restatement authors indicate a "seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed." Restatement of Torts (Second), *supra*, at § 402A cmt. g. *See also Simpson*, 74 Ill.Dec. at 111, 455 N.E.2d at 141 (finding no evidence of assumption of the risk or product misuse by distributor which would bar indemnity).

The failure of a product *user* to inspect and discover a defective product does not bar indemnity. Under Restatement of Torts (Second), *supra*, at § 886B(d), the party seeking indemnity is not barred by "innocently or negligently" failing to discover the defect. In *Stuck*, 301 S.E.2d 552, a truck buyer sought indemnity under strict liability and breach of warranty theories from the seller. The buyer purchased the truck to haul timber. As it was being moved to a work site, the rear axle shifted causing a loss of control and a head-on collision with a passing car. The buyer settled the resulting wrongful death suit against him and sought indemnity from the truck seller. At trial, the buyer's expert testified that the axle was

defective and an unexperienced person could not have detected the defects. The court held the user's failure to discover and correct the latent defeats would not bar indemnity recovery.[17] The ability of a product user to recover indemnity, even if the user negligently failed to inspect and discover defects, is an example of strict liability's risk allocation. It is also consistent with an alternative care obligation. *See Allied Mutual Casualty Corp. v. General Motors Corp.*, 279 F.2d 455 (10th Cir. 1960) (holding indemnity would be available in an alternative care situation involving defective brakes in an automobile). We therefore hold that the failure to discover and correct a latent defect does not bar indemnity recovery in an action premised on strict liability.

■■■■ Comparative indemnity principles are not applicable to reduce the amount of recovery for equitable implied indemnity actions premised on strict liability. This court has refused to apply comparative fault principles to reduce damage recoveries in cases of strict liability. *Phillips*, 806 P.2d at 835–37. *See* Romualdo P. Eclavea, Annotation, *Applicability Of Comparative Negligence Doctrine to Actions Based on Strict Liability in Tort*, 9 A.L.R.4th 633 (1981) (collecting cases). It is logically consistent to permit indemnity actions under strict liability to shift 100% of the liability to the "cheapest cost avoider." The policy choice allocates the risk of loss to the actor "in the best position to either insure against the loss or spread the loss among all the consumers of the product." *Ogle*, 716 P.2d at 342. *See* Restatement of Restitution § 93 (1937).[18]

### C(6). Breach of Warranty

The product liability action for breach of warranty, in polite society, may be termed the illegitimate child of tort and contract law. It is a misunderstood form of strict liability whose inclusion in product liability cases is often a matter of form. *See* Keeton, *supra*, at § 97. Its use in the present case, as both a theory of indemnity recovery and a direct cause of action, unfortunately, reflects the confusion and uncertainty of this area of law.

Schneider's third-party complaint alleges the following:

12. Further, Third–Party Defendant Holland expressly and impliedly warranted that said fifth wheel was safe, merchantable, and fit for ordinary and intended use; that said fifth wheel was not safe, merchantable nor was it fit for the intended purpose in that it was defective and unsafe; and that as a direct and proximate result of Defendant Third–Party Holland's breach of express and implied warranties, the fifth wheel failed to permit a proper and safe hook-up of the trailer and resulted in the accident set forth in the Complaint and the damages asserted therein against Defendants and Third–Party Plaintiffs.

\* \* \* \* \* \*

**17.** We recognize that other jurisdictions have barred indemnity under strict liability when the party seeking indemnity is considered negligent or otherwise at fault in causing the injury. *Dixon v. Chicago and North Western Transp. Co.*, 151 Ill.2d 108, 176 Ill.Dec. 6, 601 N.E.2d 704 (1992); *Frazer*, 123 Ill.Dec. at 482, 527 N.E.2d at 1257; *Tolbert*, 255 N.W.2d at 363. These courts refuse to permit indemnity recovery because of the joint care obligations found in the facts of the cases. Under the Restatement formulation we adopt, indemnity premised on strict liability is unavailable: "If [the indemnitee] has discovered the defect and sold [or used] the product anyway, he is not entitled to indemnity." Restatement of Torts (Second), *supra*, at § 886B cmt. h.

**18.** The Restatement of Restitution § 93 states a general rule for indemnity from suppliers of defective products which makes an allocation policy choice:

(1) Where a person has supplied to another a chattel which because of the supplier's negligence or other fault is dangerously defective for the use for which it is supplied and both have become liable in tort to a third person injured by such use, the supplier is under a duty to indemnify the other for expenditures properly made in discharge of the claim of the third person, if the other used or disposed of the chattel in reliance upon the supplier's care and if, as between the two, such reliance was justifiable.

(2) The rule stated in Subsection (1) applies where a person has negligently made repairs or improvements upon the land or chattels of another whereby both become liable in tort to a third person.

14. Defendants and Third–Party Plaintiffs deny the allegations of negligence asserted against them in the Complaint, but assert, however, that in the event that they, or any of them, should become liable to Plaintiff, that their negligence and/or liability, if any, was secondary and/or passive; that Defendant Third–Party Holland was negligent and/or otherwise liable and that the negligence and liability of the Third–Party Defendant Holland was primary and/or active in the design and manufacture of the fifth wheel entitling Defendants and Third–Party Plaintiffs, or any one of them, to full indemnity from Third–Party Defendant Holland of any judgment that might be entered against them, or any of them.

\* \* \* \* \* \*

WHEREFORE, Defendants and Third–Party Plaintiffs pray for judgment against the Third–Party Defendants Holland and Rissler & McMurry Co. for all sums that may be adjudged against them, or any of them, on the basis of indemnity together with costs and expenses of suit, including attorney's fees, and in the event that such indemnity in full should be refused by the court, to an assessment of liability to the extent of Third–Party Defendants negligence, fault, and/or liability, together with costs including expenses of suit and attorney's fees, and for such further and other relief as the court may deem proper.

Schneider reads two warranty claims into this language. In its briefing to this court, Schneider argues it has stated a cause of action for indemnity based on a breach of express [19] and implied warranties [20] and a direct cause of action against Holland for damages from a breach of express and implied warranties under the Uniform Com-

19. Wyo.Stat. § 34.1–2–313 (1991) provides:

(a) Express warranties by the seller are created as follows:

(i) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise;

(ii) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description;

(iii) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(b) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

20. There are two implied warranties commonly used in product liability actions, the most important of which is the implied warranty of merchantability. *See* 1 James J. White & Robert S. Summers, *Uniform Commercial Code,* § 9–7 (3d ed. 1988). Wyo.Stat. 34.1–2–314 (1991) states the implied warranty of merchantability:

(a) Unless excluded or modified (section 34.1–2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the servicing for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(b) Goods to be merchantable must be at least such as:

(i) Pass without objection in the trade under the contract description; and

(ii) In the case of fungible goods, are of fair average quality within the description; and

(iii) Are fit for the ordinary purposes for which such goods are used; and

(iv) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(v) Are adequately contained, packaged, and labeled as the agreement may require; and

(vi) Conform to the promises or affirmations of fact made on the container or label if any.

(c) Unless excluded or modified (section 34.1–2–316) other implied warranties may arise from course of dealing or usage of trade. The implied warranty of fitness for a particular purpose is stated in Wyo.Stat. § 34.1–2–315 (1991):

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

mercial Code (UCC).[21]

Schneider asserts indemnity under this cause of action is governed by principles of implied contractual indemnity. Holland challenges the basis of indemnity availability and specifically denies that Schneider has stated a claim for direct and consequential damages for a breach of UCC warranty provisions.[22]

Developed prior to the general acceptance of Restatement of Torts (Second), *supra*, at § 402A, breach of warranty actions applied strict liability principles to make the seller, in effect, an insurer of his product's safety. Keeton, *supra*, at § 97. Under this form of risk allocation, an implied warranty for the safety of a product created strict liability for the manufacturer and distributors. *See, e.g., Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A.2d 69 (1960).

The product liability action has suffered from the lack of understanding of the distinctions between contract and tort recovery. For example, Holland challenges that previous decisions of this court adopted a comparative fault rule in breach of warranty actions which conflicts with *Phillips*. In *Phillips*, this court ruled that principles of comparative negligence and comparative fault stated in Wyo.Stat. § 1–1–109 were inapplicable to strict liability actions under Restatement of Torts (Second), *supra*, at § 402A and warranty actions premised on the breach of the implied warranty of merchantability, the breach of an implied warranty of fitness for a particular purpose and the breach of express warranty. *Phillips*, 806 P.2d at 835, 837. Holland finds this holding conflicts with views stated by

this court in *Centric Corp. v. Drake Bldg. Corp.*, 726 P.2d 1047, 1053 (Wyo.1986) and *Cline v. Sawyer*, 600 P.2d 725, 732 (1979), *appeal after remand* 618 P.2d 144 (Wyo. 1980). An examination of these two cases reveals no actual conflict.

In *Cline*, 600 P.2d at 732, the court ruled that the predecessor of Wyo.Stat. § 1–1–109 required a determination of "the amount of damages and the percentage of negligence attributable to each party" in an action which the court found to be premised on a breach of warranty sounding both in negligence and in contract. The specific warranty involved was the implied warranty that work will be performed in a skillful, careful, diligent and workmanlike manner. A plumber entered in an oral contract with the builders of a trailer court to do the plumbing installation. When the work proved defective, a lawsuit was instituted. The builder's complaint stated a cause of action in contract. The plumber's answer stated defenses to a negligence action. The trial court, without distinguishing, combined the actions and found that the plumber failed to properly install the plumbing resulting in a "breach of contract and negligence." *Id.* at 731. The court first held the case stated causes of action in negligence and in contract. This court found the specific negligence at issue was the recovery of damages for injury to the builder's property by the plumber. Remanding the case, this court held Wyo.Stat. § 1–1–109 (1977) (amended 1986) required the trial court to make specific findings of each party's percentage of negligence for that action. *Id.* at 732.

21. As previously noted, the sufficiency of the complaint is not at issue before this court. The United States Court of Appeals for the Tenth Circuit will determine, based on F.R.C.P. 8 and other relevant provisions, whether Schneider has in fact stated the two warranty claims. We address the issue only to the extent necessary to answer the indemnity and warranty questions presented to this court by the certification order and the Tenth Circuit's accompanying discussion of those questions.

22. Holland, in an affirmative defense which may prove dispositive of this cause of action, has answered that the statute of limitations for

warranty recoveries, Wyo.Stat. § 34.1–2–725 (1991), precludes recovery. *Ogle*, 716 P.2d at 341. Under the statute, a breach of warranty occurs when "tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Wyo.Stat. § 34.1–2–725(b). Holland contends discovery produced evidence showing the hitch was manufactured prior to January 6, 1984. The third-party complaint was not filed until July 11, 1988.

The correctness of the court's ruling requires an understanding of distinctions between actions and the unfortunate confusion created by language. The *Cline* court noted that in a contract action, contributory negligence may reduce the damage recovery. *Cline*, 600 P.2d at 732. The specific rule the court paraphrased is today contained in 17A Am.Jur.2d *Contracts* § 627 (1991) (emphasis added) (footnote omitted):

> Failure to comply with this implied duty to perform in a skillful and workmanlike manner may not only defeat recovery but may entitle the other party to damages resulting from the unskillful and unworkmanlike performance. In an action to recover damages for the *breach of a contract*, however, the contributory negligence of the plaintiff ordinarily does not preclude his recovery. Such negligence rarely releases the defendant from the obligation to perform his contract, but is always to be considered in fixing the amount of the damages—that is, so much of the damages as is attributable to the plaintiff's negligence—should be excluded from the recovery.

After remand and another appeal, the court restated the rule and upheld the trial court finding that the plumber was 100% negligent and the builder was not contributorily negligent. *Cline v. Sawyer*, 618 P.2d 144, 147 (Wyo.1980).

The *Cline* court's decision is correct and does not conflict with our present views of strict liability in warranty. First, the damages sought were economic damages which are not recoverable under tort theories of strict liability in warranty. In *Continental Ins. v. Page Engineering Co.*, 783 P.2d 641, 647–50 (Wyo.1989), this court refused to extend product liability recovery in tort to the economic loss suffered from the failure of a product. Second, the tort, negligence, was based upon the destruction of the builder's property.

> Where the transaction complained of has its origin in a contract which places the parties in such a relation that in attempting to perform the promised service the tort was committed, the breach of contract is not the gravamen of the action.

The contract in such case is mere inducement, creating the state of things which furnishes the occasion of the tort, and in all such cases the remedy is an action *ex delicto*, and not an action *ex contractu*.

17A Am.Jur.2d, *supra*, at § 732.

The court's statement in *Centric Corp.*, 726 P.2d 1047, to which Holland directs us, offers little support. After noting that a number of courts have held that a purchaser's negligence is not a defense to a breach of warranty claim sounding in contract, the court speculated: "It may well be, however, that the recovery of consequential damages will be limited by demonstrating negligence on the part of the purchaser." *Id.* at 1053. This dictum merely rephrases the rule previously cited in *Cline* and does not support adopting comparative fault or comparative negligence principles for strict liability warranty actions.

The focus, in pursuing a theory of strict liability for breach of warranty, is on the product itself. *McLaughlin*, 778 P.2d at 64. While the warranty is often stated or implied in contract, the cause of action from its breach is not limited to contract law. In commercial sales, a warranty creates both a promise that certain facts are true and a duty to insure that the facts are as represented. *Bell v. Menzies*, 110 Ga. App. 436, 138 S.E.2d 731, 732 (1964). The breach of such a warranty, whether express or implied, creates causes of action: in contract, *ex contractu*, for the breach of promise; and in tort, *ex delicto*, for the breach of duty. *Cline*, 600 P.2d at 732. The party seeking relief is free to select one or both actions. *Id.*

The basic rule for personal injury product liability actions premised on a breach of warranty was stated by Justice Traynor of the California Supreme Court in *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 27 Cal.Rptr. 697, 700–01, 377 P.2d 897, 900–01 (1963):

> A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being. Recognized first in the case of

unwholesome food products, such liability has now been extended to a variety of other products that create as great or greater hazards if defective. * * *

Although in these cases strict liability has usually been based on the theory of an express or implied warranty running from the manufacturer to the plaintiff, the abandonment of the requirement of a contract between them, the recognition that the liability is not assumed by agreement but imposed by law * * * and the refusal to permit the manufacturer to define the scope of its own responsibility for defective products * * * make clear that the liability is not one governed by the law of contract warranties but by the law of strict liability in tort. Accordingly, rules defining and governing warranties that were developed to meet the needs of commercial transactions cannot properly be invoked to govern the manufacturer's liability to those injured by their defective products unless those rules also serve the purposes for which such liability is imposed.

The rules of commercial law most commonly applied to actions for a breach of warranty are those stated in the Uniform Commercial Code as adopted in Wyoming. Wyo.Stat. §§ 34.1–2–101 through 34.1–2–725 (1991). *See McLaughlin,* 778 P.2d at 65 (stating requirements of express or implied warranties) and *Ogle,* 716 P.2d at 338–41 (applying statute of limitations).

The claim stated by Schneider is for product liability in tort; therefore, equitable implied indemnity rules govern the right to indemnity. *Huizar v. Abex Corp.,* 156 Cal.App.3d 534, 203 Cal.Rptr 47, 51 (1984); *Hanover Ltd. v. Cessna Aircraft Co.,* 758 P.2d 443 (Utah App.1988); 42 C.J.S., *supra,* at § 48. As previously noted, the Restatement of Torts (Second), *supra,* at § 886B establishes the right to indemnity for actions premised on a breach of warranty. The Restatement formulation permits indemnity recovery from a manufacturer who supplied a defective product. *Id.* at § 886B(2)(b). Indemnity is not barred by "innocently or negligently" failing to discover the defect. *Id.*

The product liability action for breach of warranty is an action in strict liability, not based on fault, allocating a risk of loss for policy reasons to the cheapest cost avoider. *See,* Keeton, *supra,* at § 97; and Gilles, *supra,* at 1306. The rules we have announced in this opinion for indemnity recovery under strict liability in tort apply equally to actions for equitable implied indemnity premised on a breach of warranty. The former culpability distinctions of "active" and "passive" negligence or the distinctions of "primary" and "secondary" negligence which were commonly applied to indemnity under strict liability for warranty are abrogated. *Liberty Mut. Ins. Co.,* 338 N.E.2d at 861. The alleged existence, if proven, of an express or implied warranty would establish a duty owed by Holland to Schneider to manufacture a safe hitch. If Schneider successfully establishes the requisite causation, *see, e.g., Wells v. Jeep Corp.,* 532 P.2d 595, 597–98 (Wyo.1975), the duty supports a claim for indemnity premised on strict liability in warranty. *Black & Decker (U.S.) Inc. v. Essex Group, Inc.,* 105 Nev. 344, 775 P.2d 698, 700 (1989). The defenses to an indemnity action premised on a breach of warranty are: assumption of the risk and misuse of the product. *See* Restatement of Torts (Second), *supra* at § 402A cmt. n.

█ Successful actions for equitable implied indemnity premised on a breach of warranty shift 100% of the liability to the indemnitor. Consistent with our holding for strict liability under Restatement of Torts (Second), *supra,* at § 402A, principles of comparative indemnity will not apply. This holding retains a uniformity in damage recovery with the principles announced in *Phillips,* 806 P.2d 834.

As modified by this opinion, the answer to certified question "C" subsection "ii" is that equitable implied indemnity is available for actions premised on a breach of warranty involving a defective product which has caused personal injury.

## III. CONCLUSION

Equitable implied indemnity principles state the right to shift tort liability from one actor to another in the proper circum-

stances. As this case reveals, it is a complex area of law, made even more complex by the extensive litigation in which those seeking indemnity often engage. Ultimately, the decisions to permit indemnity are simply matters of risk allocation. It is within this framework that Wyoming indemnity law strives for fairness.

We answer the questions presented in the certification as follows:

A. Does Wyoming's current comparative negligence statute, W.S. § 1–1–109 (1988), which requires that damages in an action "to recover damages for negligence" be allocated according to the "percentage of fault attributable to each actor," permit strict liability and breach of warranty to be considered and weighed in the same manner as negligence in determining each actor's "percentage of fault" for the plaintiff's injuries and their corresponding liability for the plaintiff's damages?

Answer: No.

B. The second question is rendered moot by the negative answer to question A.

C. If Wyoming's current comparative negligence statute does not negate any right to indemnity in all of the above situations, and in the absence of an express contract of indemnity:

i. Does Wyoming law permit a "passively" or "secondarily" negligent actor whose failure to inspect contributed to a third party's injuries to obtain indemnity from the "actively" or "primarily" negligent actors who created or were otherwise directly responsible for the conditions that caused the third party's injuries?

Answer: Yes.

ii. Does Wyoming law grant either "actively" or "passively" negligent actors a right of indemnity against another actor who was liable for the third party's injuries on strict liability or breach of warranty grounds?

Answer: Yes.

CARDINE, Justice, dissenting.

This case may produce more litigation, more business for lawyers, more costs and expenses to the legal system, and more confusion and uncertainty in the law than anything since centuries ago when a forgotten English Lord sitting on the King's Bench squinted through a dense yellow cloud from a fire then burning in Yellowstone and said, "let the negligence trial begin."

A brief factual summary is helpful to an understanding of the dynamics of this litigation. A tractor-trailer being operated by a driver for Schneider National, Inc. (Schneider) separated, the trailer crossing into the oncoming lane, colliding with the Horowitz car, and killing three persons. Suit was filed against Schneider to recover wrongful death damages. Schneider, a perceptive, knowledgeable defendant, did not just fall off a turnip truck. It recognized the lawsuit as one likely to result in a large verdict and began to look for help in paying the loss. And so, as commonly occurs, it asserted the third party claims against the road contractor, Rissler–McMurry (Rissler), and the trailer hitch manufacturer, Holland Hitch (Holland), neither of whom had anything to do with hooking up the trailer. These third party defendants, incensed at being sued at all, refused to contribute to a settlement. So Schneider, after five days of trial and unable to frighten the third party defendants into contributing, weakened, decided discretion was the better part of valor, and settled, paying the total amount necessary to cause Horowitz to dismiss the case against Schneider with prejudice. Neither the payment by Schneider nor the dismissal of the case with prejudice discharged the liability, if any, of Rissler or Holland.

We all agree that W.S. 1–1–109(d), which provides:

Each defendant is liable only for that proportion of the total dollar amount determined as damages under paragraph (b)(i) or (ii) of this section in the percentage of the amount of fault attributed to him under paragraph (b)(i) or (ii) of this section[,]

results in a defendant never having to pay more than his percentage of fault of the total damages.

If the trial had proceeded to a jury verdict, Schneider would have, pursuant to W.S. 1–1–109(d), paid his "percentage of

the amount of fault attributed to him" and no more. Since he would not have paid an amount that should have been paid by another or discharged the obligation of another, there would be no right of contribution or partial indemnity.

But Schneider settled plaintiff's claim against it and now seeks indemnity from Rissler and Holland. To recover even partial indemnity, it must be clear that Schneider paid more than its proportionate share of Schneider's damages. It must be clear that Schneider paid Rissler's obligation and that of Holland. One first wonders why Schneider would pay the damage owed Rissler and Holland. And then one wonders why, if Schneider did pay the obligation of Rissler and Holland, it did not obtain a release from all liability for Rissler and Holland.

The majority concedes that Rissler and Holland are still liable to Horowitz. The present posture of this case then, after the majority decision, is that Schneider can proceed with a partial indemnity action against Rissler and Holland and, if successful, recover a sum of money as partial indemnity for its payment to Horowitz. Then after Schneider sues and recovers partial indemnity, Horowitz can sue Rissler and Holland and recover more damages. Query—could Rissler and Holland settle this Horowitz claim and then assert a partial indemnity claim against Schneider?

First, I would hold that if a defendant pays more than his percentage of the total damages, that payment is as a volunteer, for he cannot be required to pay more than his percentage share. I ask what beneficial policy is promoted by allowing Schneider to, for example, assume and pay Rissler's perceived obligation and then sue Rissler to recover payment it never had to pay but volunteered to pay? And what is the benefit to Rissler? Why should Schneider be allowed to fool around in matters concerning Rissler, Holland and Horowitz? The majority concedes that Rissler's liability is not extinguished—it may still be sued by Horowitz and required to pay again.

Second, if not barred because a volunteer, I would hold that before a settling tortfeasor may pursue a claim for partial indemnity, it must first be established that there was payment of a sum that should have been paid by the indemnitee and that such payment extinguished the liability of the indemnitee. It is clear in this case that Schneider paid what it determined necessary to extinguish its own liability to plaintiff—no more. It paid nothing for any other alleged tortfeasor.

I would answer Question A yes, per my dissent in *Phillips v. Duro–Last Roofing, Inc.,* 806 P.2d 834 (Wyo.1991). Refusal by this court to acknowledge that substantial justice requires that a defendant respond in damages only to the extent of that defendant's fault, whether the claim is in warranty, strict liability, or negligence, will continue to haunt this court and cause confusion in administering and applying the law. What justice or logic is there in allowing a plaintiff, 30 percent at fault for misuse of a product, to recover 100 percent of his damages because he alleges a product strict liability claim?

I would answer:
Question A: yes;
Question B: no; and
Question C: no.